Filed in Open Court
12/16/2025
Skyler B. O'Hara
By M. Garrett
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 24-CR-20016-DDC

TIMOTHY DURKIN,

Defendant.

PLEA AGREEMENT PURSUANT TO FEDERAL RULE
OF CRIMINAL PROCEDURE 11(c)(1)(C)

The United States of America, by and through Assistant United States Attorneys Faiza H. Alhambra and Trent M. Krug, Timothy Durkin, the defendant, personally and with his counsel, Charles T. Flood and Joseph W. Miller, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.**  The defendant agrees to plead guilty to Count One of the Superseding Indictment (doc. 31) charging a violation of 18 U.S.C. § 922(a)(1)(A), that is, Engaging in the Business of Dealing in Firearms Without a License. By entering into this plea agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count One of the Superseding Indictment to which he has agreed to plead guilty is not more than five years of imprisonment, a $250,000 fine, one year of supervised release, and a $100.00 mandatory special assessment. The defendant further agrees to forfeit property or money to the United States, as agreed in paragraph 9.

Ver. 03-01-24

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

On October 7, 2021, Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Kansas City Field Office reviewed an ATF National Integrated Ballistic Information (NIBIN) referral in reference to Timothy Durkin, wherein Durkin was the original purchaser of a firearm recovered in Mexico. A second investigative report involved officers locating a stolen vehicle in Kansas City, Missouri. The report reflected that one of the passengers exited a vehicle armed with an Anderson Manufacturing, model: AM-15, .300 caliber pistol, bearing serial number 16182883. The original purchaser of both firearms was Durkin.

During the investigation, Special Agents discovered Durkin was not a Federal Firearms Licensee (FFL), but owned a business called Durkin Tactical, LLC, where he advertised he sold firearm parts and accessories. Its principal place of business was in Kansas. Durkin Tactical, LLC has a Facebook account ("Durkin Tactical") that, among other things, posts firearm accessory sales and upcoming gun shows the business will be attending. Durkin had a personal Facebook account ("Tim Durks"). The Facebook's "Work and Education" heading reflected Durkin as Durkin Tactical, LLC's owner from 2015 to the present date.

On October 7, 2021, agents contacted Durkin via phone. Agents asked if he would provide assistance regarding the two traced firearms. Durkin was unable to provide any information on where the firearms went. Durkin advised he owns a firearms accessory business and collects firearms. Durkin said he came into some money, stocked up on guns, and thought about becoming an FFL but decided it was "a pain in the ass." Agents asked Durkin if he sold firearms at gun shows and he said he did not.

Agents interviewed FFL owners, who advised they have purchased over one thousand completed Anderson Manufacturing rifles arranged through Durkin. They would pay Durkin for the firearms and would then receive the shipment of rifles from Anderson Manufacturing.

Agents obtained information from Anderson Manufacturing, estimating Durkin had purchased over 1,000 completed rifles from them. Agents reviewed the records which appeared to show completed Anderson Manufacturing rifles were sent to at least three separate FFLs. Durkin made a profit on the sale of the firearms by charging the FFLs more. Agents learned Durkin was able to buy the completed firearms, as well as firearms accessories, from Anderson Manufacturing at a discounted rate because of the amount of business Durkin conducted with the company. Agents learned these firearms were acquired during the COVID pandemic when there was a shortage of firearms due to the national demand. During this time, customers were willing to pay an increased price for firearms. Due to Durkin's relationship with Anderson Manufacturing, he was one of the few able to obtain large orders from Anderson Manufacturing during the pandemic. During the pandemic, Ammo Planet representatives told agents they were nearly out of inventory before receiving shipments from Anderson Manufacturing through Durkin.

ATF obtained records from each FFL. Ammo Planet was a Federal Firearm License holder in Kirksville, Missouri. Ammo Planet purchased 1,050 rifles from Durkin. It provided invoices sent from Durkin Tactical showing it was billed for completed rifles. They also provided copies

of checks made out to Durkin Tactical for payment for the rifles. Ammo Planet paid on average $500 per rifle while Durkin was paying on average $370 per rifle. Durkin profited approximately $136,5000 from these transactions with Ammo Planet.

Locked and Loaded was a Federal Firearm License holder in Pana, Illinois. Locked and Loaded purchased 50 AM-15 rifles from Durkin for $490 each. Durkin purchased those firearms from Anderson Manufacturing for $416 per rifle. Durkin made approximately $3,750 in profit from these markups.

Tulsa Tactical was a Federal Firearm License holder in Claremore, Oklahoma. Tulsa Tactical purchased 50 AM-15 rifles from Durkin that were shipped by Anderson.

During the interviews with FFLs, agents learned Durkin was selling completed firearms at gun shows. Durkin had a Facebook account that also contained photos of a banner at his booth advertising "AR-15 $599." Jackson Jewelry & Pawn purchased 28 completed AM-15 rifles from Durkin at the Wanenmacher Gun Show on April 10, 2021. Owners of Jackson Jewelry and & Pawn said Durkin was putting together upper and lower receivers at the gun show. Other individuals said they purchased rifles from Durkin, paid Durkin, and then were sent to Tulsa Tactical, an FFL, to complete paperwork. Some paid in cash, while others provided Venmo receipts or bank statements showing payments to Durkin Tactical. One individual purchased a rifle at the April 2019 Wanenmacher gun show. Facebook records show this individual messaged Durkin in October 2020, asking if Durkin would be at the next Wanenmacher Gun show because he purchased an AR-15 from Durkin last year and was interested in buying more rifles. Durkin paid $425 per rifle and sold 36 rifles for approximately $599. Durkin profited approximately $6,264 from these transactions at the Wanenmacher Gun show in 2021.

Agents also discovered that Durkin arranged to purchase a Barrett rifle from an FFL in Pana, Illinois. Since Durkin was an out-of-state resident, the FFL was legally required to ship the firearm to an FFL in Kansas. Durkin represented that he was a permitted FFL holder and picked up the gun in person. He provided the FFL with a copy of Fall Creek Armory's FFL license. He arranged with Fall Creek Armory to make it appear that the firearm was shipped to that FFL when it was not. Durkin later sold the Barrett Model 821A1 long gun to that same FFL owner.

Durkin profited approximately $146,014 by engaging in the business of dealing in firearms without a license in the state of Kansas and elsewhere.

    3.    **Proposed Rule 11(c)(1)(C) Sentence.**  The parties propose, as an appropriate disposition of the case:

    (a)    a term of probation lasting 5 years;

    (b)    a $146,014.00 fine; and

    (c)    the mandatory special assessment of $100.00.

The parties seek this binding plea agreement as an appropriate disposition of the case, because if the Court permits itself to be bound by the proposed sentence, it brings certainty to the sentencing process; it assures that the defendant and the government will benefit from the bargain they have struck; it serves the interests of justice; and it assures a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a). If the Court does not agree with the sentence, the defendant and United States may be restored to the positions they maintained prior to reaching this plea Agreement. This plea agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, United States Probation Office, United States Marshals' Service and other law enforcement resources.

4. **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the advisory sentencing guidelines. Because this proposed sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States agrees to dismiss the remaining counts of the Superseding Indictment at the time of sentencing, and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Superseding Indictment. Specifically, the United States will dismiss Counts two and three of the Superseding Indictment (doc. 31). Further, the United States agrees to not oppose a future application the defendant may make pursuant to 18 U.S.C. § 925(c) and 28 CFR Part 107- Relief from Disabilities Under the Gun Control Act § 925(c), if 5 years has passed since the conviction in this case, and the defendant has no new criminal investigations, arrest or convictions.

6.      **Consequences for Violating the Plea Agreement.** The United States' obligations under this plea agreement are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this plea agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this plea agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this plea agreement's terms, this plea agreement will be deemed null and void, and the United States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this plea agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this plea agreement.

7.      **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed plea agreement and sentence. It is

solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8. **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** If the Court agrees to be bound by the proposed plea agreement and sentence, the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea. If the Court announces that it will NOT be bound by the proposed plea agreement, the parties agree that at that time either party may withdraw the proposed plea agreement, and if either does so, then all parties will be restored to the positions they were in prior to the entry of the defendant's plea. If neither party elects to withdraw the proposed plea agreement at the time the Court announces that it will not be bound, and before the Court proceeds with sentencing, then the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea.

9. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

10. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords

him the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C). The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by the parties under Rule 11(c)(1)(C). However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

11. **Identification of Assets and Agreement Concerning Monetary Penalties.** In order to facilitate the collection of criminal monetary penalties, including restitution, fines, and assessments, to be imposed in connection with this case, defendant agrees as follows:

    (a) Payments toward anticipated criminal monetary penalties made prior to sentencing will be held by the Court Clerk and then applied to the criminal monetary penalties following entry of the Judgment in a Criminal Case. If the amount paid prior to sentencing exceeds the amount ordered at sentencing, the United States Attorney's Office will request language to be included in the Judgment in a Criminal case to authorize the Court Clerk to refund any overpayment to defendant. Payments made prior to sentencing can be sent to the following address and should reference defendant's name and case number:

        Clerk, U.S. District Court
        401 N. Market, Room 204
        Wichita, Kansas 67202

(b) Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control of more than $2,000 in value, without written approval from the United States Attorney's Office.

(c) Within 30 days of any request by the United States Attorney's Office, defendant agrees to execute a financial statement and provide supporting documentation. Defendant expressly authorizes the United States to obtain a credit report before sentencing. Further, defendant agrees to execute authorizations for the release of all financial information requested by the United States.

(d) Defendant agrees the United States Attorney's Office may, pursuant to F.R.Civ.P. Rule 45, subpoena any records it deems relevant to conduct a full financial investigation of defendant's assets prior to sentencing.

(e) Defendant authorizes the United States to file a Notice of Lis Pendens prior to judgment on any real property in which defendant holds an ownership interest.

(f) Defendant agrees that all information defendant provides to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office. Likewise, all information defendant provides to the United States Attorney's Office or independently obtained by the United States Attorney's Office in the course of its financial investigation of defendant may be provided to the United States Probation Office.

(g) All monetary penalties (including any fine, restitution, assessment, or forfeiture judgment) imposed by the Court, will be due and payable immediately and subject to immediate enforcement by the United States. Any payment schedule set by the Court is a minimum schedule of payment and not a limitation on the United States to enforce the judgment.

(h) Defendant waives any requirement for demand of payment on any criminal monetary penalties or forfeiture judgment entered by this Court.

(i) Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default.

(j) If defendant posted funds as security for defendant's appearance in this case, the defendant authorizes the Court to release the funds posted the Court Clerk to be applied to the criminal monetary impositions at the time of sentencing.

(k) Defendant understands he has an obligation to notify the court and the United States Attorney's Office of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution pursuant to 18 U.S.C. § 3664(k).

    (l)    Defendant understands that failure to comply with the provisions of this section may constitute a breach of this plea agreement, as outlined in Paragraph 6, above.

12.    **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13.    **Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

14.    **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

15. **Parties to the Agreement.** The defendant understands this plea agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

16. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

/s/ Faiza H. Alhambra  
Faiza H. Alhambra  
Assistant United States Attorney  
500 State Avenue, Suite 360  
Kansas City, Kansas 66101  
913-551-6904  
913-551-6541 (fax)  
Faiza.Alhambra@usdoj.gov  
Kan. S. Ct. No. 24525  

Date: 10/27/2025

/s/ Trent M. Krug  
Trent M. Krug  
Assistant United States Attorney  
500 State Avenue, Suite 360  
Kansas City, Kansas 66101  
913-551-6730  
913-551-6541 (fax)  
Trent.Krug@usdoj.gov  
Kan. S. Ct. No. 19454  

Date: 10/27/2025

/s/ D. Christopher Oakley						Date: 10/27/2025
D. Christopher Oakley
Office of United States Attorney - KCKS
500 State Avenue, Suite 360
Kansas City, KS 66101
Assistant United States Attorney
Supervisor

/s/ Aaron L. Smith						Date: 10/28/2025
AARON L. SMITH
Criminal Chief


								Date: 12/16/2025
Timothy Durkin
Defendant


								Date: 12/16/2025
Charles T. Flood
Flood & Flood Law Office
914 Preston, Suite 800
Houston, TX 77002
Counsel for defendant



								Date:
Joseph W. Miller
Law Offices of Joseph Miller, LLC
PO Box 83440
Fairbanks, AK 99708
Counsel for defendant

11